IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

**KIMBERLY MONIQUE ROSS**                                                                                          **PLAINTIFF**

v.                                                                                    CIVIL ACTION NO. 3:25-cv-798-TSL-MTP

**BRANDI BROWN, SHIRLEY KENNEDY,**
**and EDWARD KRAMER**                                                                                       **DEFENDANTS**

### REPORT AND RECOMMENDATION

THIS MATTER is before the Court *sua sponte* for evaluating whether Plaintiff Kimberly Ross's claims should be dismissed under 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim on which relief may be granted. Having considered the record and applicable law, the undersigned recommends that Ross's federal claims be dismissed with prejudice, that the Court decline to exercise supplemental jurisdiction over Ross's state-law claims, and that her state-law claims be dismissed without prejudice to her right to raise them in state court.

### BACKGROUND

Since February of 2025, Ross, proceeding *pro se*, has filed ten lawsuits in this Court. Nine of the ten lawsuits relate to two child-custody matters pending in state chancery courts and the interactions underlying and arising from those state-court matters.

The first of these chancery matters involves the custody of Ross's child. In 2011, Melvin Wilson's paternity of the child was established in the Hinds County Chancery Court, and thereafter, the chancery court entered an order awarding Wilson full legal and physical custody of the child.

Ross has filed three cases in federal court concerning this child-custody matter. In one, she sued Terence High, the attorney for Wilson. *See Ross v. High*, No. 3:25-cv-784-KHJ-MTP. In another, she sued the Mississippi Department of Child Support Enforcement. *See Ross v. Miss.*

1

*Dep't of Child Support Enforcement*, No. 3:25-cv-785-KHJ-MTP.  In the instant action, she sued Wilson's prior attorney, Brandi Brown, along with two court-appointed guardians ad litem, Shirley Kennedy and Edward Kramer.

In her Amended Complaint [3], Ross alleges that Brown, Kennedy, and Kramer "created, altered, and approved" an agreed order entered on July 15, 2024, which modified the custody agreement between Ross and Wilson. *See* [3] at 3.  According to Ross, Wilson did not appear in court or sign the agreed order. *Id*.  Instead, Wilson's attorney, Brown, signed the agreed order, but Brown allegedly did not have the authority to sign on Wilson's behalf. *Id*.  Defendants allegedly "knew fully that they were not supposed to alter any written agreements without the allowance of review and approval by both parties, which was never done and never happened." *Id*. at 2.

Ross admits that she signed the agreed order but alleges that she did so under duress as Defendants "pressured and coerced" with threats that she would be denied overnight visitation with her child if she refused to sign. *Id*. at 3.  According to Ross, Defendants' actions defrauded the chancery court. *Id* at 2, 4.

Based on these allegations, Ross raises claims under 42 U.S.C. § 1983 for violations of her due process and equal protection rights, a claim under 42 U.S.C. § 1985(3) for conspiracy to interfere with her civil rights, and a claim under 42 U.S.C. § 1986 for failure to prevent a conspiracy to interfere with her civil rights. *Id*. at 4.  Ross also raises state-law claims of fraud and intentional infliction of emotional distress *Id*.

As relief, Ross seeks compensatory and punitive damages; attorney's fees and costs; a declaration that Defendants' actions were unconstitutional; and an order from this Court voiding the July 15, 2014, agreed order, prohibiting further enforcement of fraudulent orders, and prohibiting retaliation or interference with Ross's litigation. *Id*. at 5.

**DISCUSSION**

*Standard*

As Plaintiff is proceeding in this action *in forma pauperis*,[1] the Court must screen her complaint under 28 U.S.C. § 1915(e)(2),[2] which sets forth the standard for screening: "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that (A) the allegation of poverty is untrue; or (B) the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune for such relief." 28 U.S.C. § 1915(e)(2).

In considering whether a plaintiff has stated a claim on which relief may be granted, the "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004) (quoting *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999)).  However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

A plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if

---

[1] *See* Order [6].

[2] The screening requirement applies whether the plaintiff is a prisoner or a non-prisoner. *Walters v. Scott*, 2014 WL 5575494, at *2 (S.D. Tex. Nov. 11, 2014) (citing *Newsome v. Equal Employment Opportunity Comm.*, 301 F.3d 227, 231-33 (5th Cir. 2002)).

doubtful in fact)." *Id.* at 555. (citations and footnote omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "This standard 'simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of' necessary claims or elements." *In re S. Scrap Material Co.*, 541 F.3d 584, 587 (5th Cir. 2008) (quoting *Twombly*, 550 U.S. at 556).

<u>Federal Claims</u>

  a. Claims Under 42 U.S.C. § 1983

In her Amended Complaint [3], Ross raises claims under § 1983 for violations of her due process and equal protection rights. To prevail on a § 1983 claim, a plaintiff must establish that: (1) she has been deprived of a right secured by the Constitution or the laws of the United States and (2) the deprivation was caused by a person acting under color of state law. *See Bass v. Parkwood Hosp.*, 180 F.3d 234, 241 (5th Cir. 1999). The requirement that the deprivation occur under color of state law is also known as the "state action" requirement.

Here, Defendants are private individuals, and "[p]rivate individuals generally are not considered to act under color of state law, *i.e.*, are not considered state actors . . . ." *Ballard v. Wall*, 413 F.3d 510, 518 (5th Cir. 2005). "The under color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful." *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999). However, it is possible, in limited circumstances, for a private individual to be considered a state actor. *See Ballard*, 413 F.3d at 518.

Courts have used multiple tests to determine whether a private individual's conduct can be fairly attributable to the State, including the "public function test," "state compulsion test," "nexus" or "state action test," and "joint action test."

> The "public function test" examines whether the private entity performs a function which is "exclusively reserved to the State". *Flagg Brothers, Inc. v. Brooks,* 436 U.S. 149, 158, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978). Under the "state compulsion test", a private actor's conduct is attributable to the State when it exerts coercive power over the private entity or provides significant encouragement. *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 170–71, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). The "nexus" or "state action test" considers whether the State has inserted "itself into a position of interdependence with the [private actor, such] that it was a joint participant in the enterprise". *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 357–58, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974); *see also Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982). And, under the "joint action test", private actors will be considered state actors where they are "willful participant[s] in joint action with the State or its agents". *Dennis v. Sparks*, 449 U.S. 24, 27, 101 S.Ct. 183, 66 L.Ed.2d 185 (1980). The Supreme Court has not resolved "[w]hether these different tests are actually different in operation or simply different ways of characterizing [this] necessarily fact-bound inquiry...." *Lugar*, 457 U.S. at 939, 102 S.Ct. 2744.

*Cornish v. Correctional Services Corp.*, 402 F.3d 545, 549-50 (5th Cir. 2005).

Ross alleges that all three Defendants acted under color of state law. She alleges that Brown did so by acting as an "attorney of record in a chancery matter." [3] at 1. She further explains that Brown acted under color of state law "by participating in a court-appointed proceeding, drafting and submitting altered judicial documents, and exercising authority within an active chancery matter." *Id*. at 2. But, "[t]he law is clear that a private attorney who merely represents a client in a civil proceeding . . . does not act under the color of state law." *Dolenz v. Akin*, 1997 WL 21388, at *3 (N.D. Tex. Jan. 14, 1997) (collecting cases); *see also Mills v. Criminal Dist. Court No. 3*, 837 F.2d 677, 679 (5th Cir. 1988) ("private attorneys, even court-appointed attorneys, are not official state actors, and generally are not subject to suit under section 1983"). Thus, Ross has failed to allege that Brown was a state actor.

Turning to Kennedy and Kramer, Ross alleges that these Defendants were state actors because they served as "guardians ad litem appointed by a chancery court." [3] at 1-2. In 1981, the United States Supreme Court, in *Polk County v. Dodson*, held that a public defendant is not a state actor by virtue of the position because a public defendant is not "the servant of an administrative superior," but must exercise "independent judgment of behalf of the client." 454 U.S. 312, 321 (1981). Since the Supreme Court handed down *Polk County*, courts have expanded upon its analysis by holding that guardians ad litem are not state actors by virtue of their positions or because a court appoints them. *See Meeker v. Kercher*, 782 F.2d 153, 155 (10th Cir. 1986) ("the reasoning of *Polk County* applies with equal force to a guardian ad litem representing a minor in a state proceeding"); *Hall v. Dixon*, 2010 WL 3909515, at *40 (S.D. Tex. Spet. 30, 2010) (collecting cases); *see also Crank v. Crank*, 146 F.3d 868, 1998 WL 327260, at *1 (5th Cir. June 4, 1998) ("Even if the district court had permitted [plaintiff] to amend her complaint to add the children's guardian *ad litem* as a party, [plaintiff] would still lack a state actor defendant.").

As Ross has failed to allege sufficient facts showing that Defendants were state actors, her § 1983 claims should be dismissed.[3]

---

[3] The undersigned also notes that Ross's request that the Court void the state-court order—in addition to being improperly brought against private individuals—would be barred by either the *Rooker-Feldman* doctrine or the *Younger* abstention doctrine, depending on whether the state court order constitutes a final judgment. *See Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1982) (together these cases establish the principle that federal district courts lack jurisdiction over suits which are, in substance, appeals from state court judgments); *see also Younger v. Harris*, 401 U.S. 37 (1971); *Bice v. Louisiana Public Defender Bd.*, 677 F.3d 712 716 (5th Cir. 2012) (explaining that the *Younger* abstention doctrine requires federal court to not exercise jurisdiction over suits when (1) the federal proceeding would interfere with an ongoing state judicial proceeding, (2) the state has an important interest in the subject matter of the claim, and (3) the plaintiff has an adequate opportunity to raise constitutional challenges in the state court).

b.  Claims Under 42 U.S.C. §§ 1985(3) and 1986

In addition to § 1983 claims, Ross asserts claims under § 1985(3) and 1986.  Section 1985(3) creates a cause of action against those who conspire "for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws." 42 U.S.C. § 1985(3).  Claims under § 1985(3) are directed at conspiracies to deprive equal protection and require a plaintiff to show "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Kush v. Rutledge*, 460 U.S. 719, 726 (1983); *see also Word of Faith World Outreach Ctr. Church v. Sawyer*, 90 F.3d 118, 124 (5th Cir. 1996) ("Essential to the claim . . . is that the conspiracy be motivated by racial animus.").

Here, there is no allegation, conclusory or otherwise, of racial or class-based discriminatory animus.  Accordingly, Ross has failed to state a claim under § 1985(3).

This is also fatal to Ross's § 1986 claims.  "Section 1986 penalizes those with knowledge of and the power to prevent § 1985 conspiracies who fail to do so." *Bryant v. Military Dep't of Miss.*, 597 F.3d 678, 687 (5th Cir. 2010).  Thus, a valid § 1985 claim is a prerequisite to a § 1986 claim.  Because Ross has failed to state a claim under § 1985, her derivative claim under § 1986 also fails.

Accordingly, Ross has failed to state any viable federal claim.  That leaves Ross's state-law claims.

<u>State-Law Claims</u>

Ross raises the state-law claims of fraud and intentional infliction of emotional distress and invokes this Court's supplemental jurisdiction over these claims under 28 U.S.C. § 1367.

The undersigned, however, recommends that the Court decline to exercise supplemental jurisdiction over the state-law claims once Plaintiff's federal claims are dismissed.

Pursuant to § 1367(c), district courts may decline to exercise supplemental jurisdiction over a state law claim if

> (1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which is has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c). In deciding whether to exercise supplemental jurisdiction, the Court should consider the § 1367(c) factors along with the common law factors of judicial economy, convenience, fairness, and comity. *Enochs v. Lampasas Cnty.*, 641 F.3d 155, 159 (5th Cir. 2011).

Although not absolute, "[t]he general rule is that a court should decline to exercise jurisdiction over remaining state-law claims when all federal-law claims are eliminated before trial . . . ." *Brookshire Bros., Inc. v. Dayco Products*, 554 F.3d 595, 602 (5th Cir. 2009). "[W]hen the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain," the common law factors generally weigh against exercising jurisdiction over the state-law claims. *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988). Further, "[j]udicial economy favors remand when the district court has devoted 'hardly any federal resources, let alone a significant amount of resources' to the state law claim at the time the federal claims were dismissed." *Savoy v. Pointe Coupp Par. Plice Jury*, 2015 WL 3773418, at *3 (M.D. La. June 16, 2015) (quoting *Enochs*, 641 F.3d at 159).

This case is at the earliest stage. Defendants have not yet been served, and this Court has devoted few resources to the state-law claims. Nothing in the record suggests that the parties would be prejudiced by this Court not exercising supplemental jurisdiction over the state-law

claims. And, the principles of comity and federalism favor dismissal of these claims. *See Parker & Parsley Petroleum Co. v. Dresser Indus.*, 972 F.2d 580, 590 n.12 (5th Cir. 1992) ("[T]he interests of comity and federalism are better served when federal courts avoid unnecessary determinations of state law."). This is especially true here where the claims are related to a matter pending in or decided by a state court.

## RECOMMENDATION

Based on the foregoing, the undersigned recommends that:

1. The Court DISMISS Plaintiff's federal claims with prejudice;

2. The Court decline to exercise supplemental jurisdiction over Plaintiff's state-law claims;

3. The Court DISMISS Plaintiff's state-law claims without prejudice to her right to raise them in state court.

## NOTICE OF RIGHT TO OBJECT

In accordance with the Rules of this Court, any party, within fourteen days after being served a copy of this recommendation, may serve and file written objections to the recommendations, with a copy to the District Judge, the U.S. Magistrate Judge, and the opposing party. The District Judge at that time may accept, reject or modify in whole or in part, the recommendation of the Magistrate Judge, or may receive further evidence or recommit the matter to this Court with instructions. Failure to timely file written objections to proposed findings, conclusions, and recommendations contained in this report will bar an aggrieved party, except on the grounds of plain error, from attacking on appeal unobjected to proposed factual findings and legal conclusions accepted by the District Court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415 (5th Cir. 1996).

This 8th day of January, 2026.

s/ Michael T. Parker
United States Magistrate Judge
